Bond vs. The City of Kenosha et al.

## BOND VS. THE CITY OF KENOSHA and others.

A sale of lands in the city of Kenosha for unpaid taxes of 1857, was not invalid on the ground that railroad property within said city was intentionally omitted from the tax list. *Kneeland vs. The City of Milwaukee*, 15 Wis., 454, followed.

The issue of a tax deed for lands sold for unpaid taxes, will not be restrained on the ground that a part of said taxes were illegal, if such illegal part was readily distinguishable from the part which was valid, and the plaintiff had not offered to pay the latter.

Nor will such an injunction be granted in a case where the irregularity complained of in the tax proceedings, produced no actual injustice to the plaintiff, but diminished rather than increased his taxes.

Section 43 of the charter of the city of Kenosha, (chap. 123, Laws of 1850,) which authorizes the council, for the purpose of constructing a harbor in said city, to levy a special tax on all lands within the city subject to taxation, *not including any improvements made thereon,* is not in violation of sec. 1, Art. VIII of the constitution of this state, which requires that "the rule of taxation shall be uniform;" that provision not applying to special assessments by municipal corporations for local improvements. *Weeks v. City of Milwaukee,* 10 Wis., 242, followed.

The court cannot say that the enactment of such a provision in a city charter transcends the power of the legislature.

APPEAL from the Circuit Court for *Kenosha* County.

Action to restrain the defendants from executing deeds of certain lands in the city of Kenosha, sold in 1858 by the treasurer of Kenosha county, for the taxes of 1857. The complaint alleged, in substance, that the sales were illegal because the railroad track, bridges, depot, &c., of the Kenosha, Rockford & Rock Island R. R. Co., and similar property of the Milwaukee & Chicago R. R. Co., were illegally omitted from the assessment roll; and also because there was included in the sums for which the lands in question were sold, certain amounts assessed against them as part of a tax illegally levied by the common council of said city for the construction of a harbor therein. Section 43 of the charter of the city of Kenosha (Laws of 1850, ch. 123) authorizes the city council to levy a special tax, not exceeding $10,000 annually, to construct such harbor; said tax to be levied on all lands within the limits of said city not exempt from taxation by the laws of the United

States or of this state, *not including any improvements made thereon.* If no tax should be levied in any year for the construction of a harbor, the council were authorized to borrow, on the credit of the city, an amount not exceeding $10,000, to be applied to the construction of such harbor; but it was provided that all taxes levied for the payment of the principal or interest of the sums so borrowed, should be levied only on the kind of property above described. Section 44 declared that no tax should be levied or money borrowed under the provisions of the preceding section, unless a majority of the voters possessed of a freehold estate, or occupying lots upon leases, on which lots they paid the taxes, who should actually vote upon the question, should first in each year determine to raise such a tax or authorize such a loan. Section 8, chap. 110, Private Laws of 1853, amendatory of the charter, re-enacts the provisions of said section 44, extending them to other special taxes. The city council, in pursuance of these provisions, borrowed and issued bonds for $5000 in 1850, and $10,000 in 1856, for the construction of said harbor, and in 1857 levied a special tax of $3000 to pay accrued interest on said bonds, and $3000 to be applied in the further construction of the harbor. In each case the question was submitted to a vote of the class of persons defined by the charter as above stated; and the tax was assessed only against the kind of property pointed out in the charter for that purpose. The complaint alleges that a large number of " qualified and legal voters " were thus excluded from giving their votes upon the several questions thus submitted, and that a large amount of property in said city, to wit, of personal property and improvements upon real estate, was exempted from such special taxes; and that on these grounds the taxes were illegal. It further alleges that in the assessment roll for 1857, the plaintiff's lots, being the lands in question in this suit, were valued at $1,900 without the improvements, and at $4,200 with the improvements. It also states that the certificates of sale of said lots do not

show what part of the sum for which each lot was sold consist-
ed of the tax for the harbor improvement, and what part of
the taxes for other purposes. It also alleges that the plaintiff
had within the city, all the time that the tax list and warrant
for 1857 were in the hands of the city treasurer for collection,
a sufficient amount of personal property upon which the city
treasurer might have levied, to have paid all taxes legally as-
sessed upon said lands.

The defendants answered, stating the aggregate amount of
taxes for which each parcel of land described in the complaint
was sold, and also stating severally the amount of the "City
Tax," the "State, School and County Tax," the "Harbor Tax,"
and the "Five per cent. Collector's Fees," of which the afore-
said aggregate was composed, and also the amount of "costs,
interest and charges" added to said aggregate at the time of
the sale, and making the amount for which the parcel was sold.
The answer further alleged that "upon the books of the city
treasurer the various items making up said gross amounts of
taxes were placed in separate columns, and the plaintiff could
have ascertained and paid any item of said tax which he should
have desired."—To this answer the plaintiff demurred as in-
sufficient to constitute a defense, and the court sustained the
demurrer; from which decision the defendants appealed.

*O. S. & F. H. Head*, for appellants, as to the constitutionali-
ty of the provisions in the city charter relative to the assess-
ment of the harbor tax upon real estate alone, valued without
reference to the improvements, cited *Weeks v. Milwaukee*, 10
Wis., 242; *Soens v. City of Racine*, id., 271; *Lumsden v. Cross*,
id., 282; *Hill v. Higdon*, 5 Ohio St., 243; *State ex rel. Christo-
pher vs. City of Portage*, 12 Wis., 562. To the point that even
if such tax was illegal, the plaintiff was not entitled to the re-
lief sought, because he had not offered to pay the legal taxes,
they cited *Libby v. Burnham*, 15 Mass., 144; *Stetson v. Kemp-
ton*, 13 id., 272; *Drew v. Davis*, 10 Vt., 506; *Mills v. Gleason*,
11 Wis., 497; *Kelly v. Corson*, id., 1.

*J. J. Pettit*, for the respondent, as to the illegality of the harbor tax, cited *Foster v. City of Kenosha*, 12 Wis., 617 ; *State vs. Williams*, 5 id., 308–17 ; *State v. Lean*, 9 id., 283 ; *Weeks v. City of Milwaukee*, 10 id., 243–70 ; *Soens vs. City of Racine*, id., 271–82 ; *Lumsden v. Cross*, id., 282–89. 2. The absurdity of taxing real estate without reference to the improvements is apparent from the fact that the land cannot be sold without the improvements for the unpaid taxes. 3. The answer states that the various items which make up the gross amount of taxes appear upon the books of the city treasurer. But the plaintiff cannot redeem by paying to the city treasurer, but only by paying to the clerk of the board of supervisors, on whose books those items do not appear. The sale is for the aggregate, and the certificate given is for the total sum and not for each separate tax assessed. R. S. 1849, ch. 15, secs. 71–99, 102 ; Gen. Laws of 1853, ch. 37, secs. 1–4 ; Laws of 1854, ch. 66, sec. 7 ; Laws of 1859, ch. 22, sec. 54 ; Pr. Laws of 1857, p. 305, sec. 9. The statute makes no provision for redeeming the land from the lien of the tax certificate by paying a part of the amount for which the land was sold.

*By the Court*, COLE, J. We do not understand that any other objection is taken to the validity of the tax for state, county, city and school purposes, than that the railroad property within the city limits was exempted in levying those taxes. This objection has been overruled in cases already decided, and need not be further considered. So, even assuming that the harbor tax so called was void, still the respondent would not be entitled to a perpetual injunction restraining the proceedings under the tax sales, except upon the condition that he paid the valid taxes which in equity he was bound to pay. For we have held that when the valid and void taxes were separable, and the amount of the former could be readily ascertained, then the resisting tax payer must pay those which were legal as a condition to being relieved from the payment of the

illegal tax. *Mills vs. Johnson*, unreported, and *Hersey vs. Supervisors of Milwaukee Co.*, 16 Wis., 185. And further when it appears that no actual injustice has been done, the error or irregularity complained of resulting in a diminution instead of an increase of the tax, that in such circumstances a court of equity ought not to interfere to restrain the proceedings. *Warden vs. Supervisors of La Fayette Co.*, 14 Wis., 618 ; *Kellogg vs. City of Oshkosh*, id., 623 ; *Miltimore vs. Supervisors of Rock Co.*, 15 id., 9. Here there can be no difficulty in determining the amount of the tax levied for state, county, city and school purposes ; and therefore the respondent ought to pay those taxes, even if he is right in the theory that the other tax is wholly void. But we are of the opinion that even the harbor tax is valid.

That tax was undoubtedly levied under section 43 of the original charter. This section authorizes the city council to levy a special tax of any sum not exceeding ten thousand dollars annually, for the purpose of constructing a harbor at the south mouth of Pike creek, said tax to be levied on all lands and town lots within the limits of the city subject to taxation *not including any improvements made thereon.* In lieu of a tax, the council was authorized to borrow money on the credit of the city in such sums as they might deem proper, not exceeding ten thousand dollars, providing the taxes levied for the payment of the principal and interest on the money borrowed should be levied on the same kind of property that the tax for the construction of the harbor was levied on. In this case the tax was levied to pay the interest borrowed for the improvement of the harbor. It appears that the respondent's lots were improved; and it is alleged that the assessment of the harbor tax was made upon the lots " as though divested of improvements." But still it is insisted that the tax is illegal, because it was levied in violation of the rule of uniformity required by the constitution. But we are of the opinion that the provision of the constitution relating to uniformity in taxation does not

apply to a tax of this character. It is more properly speaking of the nature of an "assessment," or special tax imposed for the purpose of municipal and local improvements. To that species of taxation we have held that the principle of uniformity did not apply. *Weeks vs. City of Milwaukee*, 10 Wis., 242; *Lumsden vs. Cross*, id., 282; *State ex rel. Christopher vs. The City of Portage*, 12 Wis., 562; *Reeves vs. The Treasurer of Wood Co.*, 8 Ohio St., 333. If, then, assessments for local improvements do not come within the purview of the section in respect to uniformity in the rule of taxation, then the manner and principle upon which they may be imposed rest very much in the discretion of the legislature. In this case the burden is placed upon the real estate aside from the improvements, because that property is more especially benefited by the harbor improvement. At all events this seems to have been the view taken by the legislature of the matter when it prescribed the basis upon which the harbor tax should be levied. We cannot say that it is unjust or inequitable, or, above all, that it transcends the power of the legislature over the subject. The real estate of the city derives a more direct and special benefit from the harbor improvement, and consequently the burden is laid upon that class of property. And as the respondent's real estate is improved, and the tax is levied upon it "as though divested of improvements," it is probable that his tax was rather diminished than increased by the mode or principle of assessment upon which the tax was laid.

For these reasons we are of the opinion that the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint.