Morrill v. Taylor.

ANNIE MORRILL, PLAINTIFF IN ERROR, V. RICHARD W.
TAYLOR, DEFENDANT IN ERROR.

1. **Taxes:** ASSESSMENT. A valid assessment is an essential pre-
requisite to any exercise of the taxing power by the board of
county commissioners.

2. ————: OATH OF ASSESSOR. The requirement of the law pre-
scribing the oath to be taken and subscribed by the assessor, cer-
tified by the officer administering it and attached to the assess-
ment roll, must be substantially complied with; and without
such compliance with the law no jurisdiction can be conferred
on the board of commissioners in the matter of the taxation of
property.

3. **Practice in Supreme Court:** SETTING ASIDE JUDGMENT.
An accident or mistake in respect of a fact occuring on the trial
of a cause in the district court, which is not incorporated in a
bill of exceptions and made a part of the record, is not sufficient
ground to set aside the judgment of the supreme court and to
grant a new trial.

4. ————: REHEARING OF A CAUSE. A petition for the rehearing
of a cause upon such ground is somewhat in the nature of a writ
of error in fact, and lies only to the same court in which the
judgment was given to examine its own record and rectify the
error, if any exist.

5. ————: PROCEEDINGS IN ERROR. Under the constitution and
statute relating to proceedings in error the supreme court can
only reverse, vacate, or modify a judgment rendered by the dis-
trict court *for errors appearing on the record.*

6. ————: REHEARING; AFFIDAVITS INADMISSIBLE. Upon an ap-
plication for a rehearing the court cannot receive any affidavits
in respect of matters entirely foreign to the record.

ERROR from the district court of Lancaster county.
Tried below before SAVAGE, J. The opinion states the
case.

*C. C. Burr,* for plaintiff in error.

The defendant in error claims that by virtue of section
one hundred and four of the revenue law, his deeds are

*prima facie* evidence of the facts set forth in that section. But the record shows that a substantial pre-requisite of the statute had not been complied with, viz: the taking of the oath by the assessor. What then is the condition of defendant in error? The instant it is shown by the party claiming adversely to the deed that any pre-requisite of the statute has not been complied with the *prima facie* character of the deed is destroyed, all of its presumptions overthrown, the deed becomes mere waste paper, and the grantee in the tax deed, or those claiming under him, must prove by satisfactory evidence the regularity of the proceedings, and the *onus probandi* is shifted to the party claiming under the tax deed. Blackwell on Tax Titles, p. 363. *Sibley v. Smith,* 2 Mich., 497. *Elliott v. Elmore,* 16 Ohio, 24. *Wright v. Dunham,* 13 Mich., 414. *Warren v. Grand Haven,* 30 Mich., 24. *People v. S. F. Savings Union,* 31 Cal., 132. *Rayburn v. Kuhl,* 10 Iowa, 92. *Bidleman v. Brooks,* 28 Cal., 74. The omission of the assessors to comply with the requirements of the statute in making the affidavit to the assessment roll is a jurisdictional question. *Cases cited above.* This defect in the assessment roll is not cured by section six of the act of June 6, 1871. Gen. Stat., 936. A statute which cures irregularities cannot cure this defect of jurisdiction; curative laws may heal irregularities in action, but they cannot cure a want of authority to act at all; whatever the legislature could not have authorized originally it cannot confirm. *McReynolds v. Longenberger,* 57 Pa. St., 13. *McCready v. Sexton,* 29 Iowa, 356. *Parker v. Same,* 29 Iowa, 421. *Denny v. Mattoon,* 2 Allen, 361. *Nelson v. Rountree,* 23 Wis., 397. *McDaniel v. Correll,* 19 Ill., 226. *Richards v. Rote,* 68 Penn. St., 248. *State v. Doherty,* 60 Maine, 504. *Griffin's Executors v. Cunningham,* 20 Grat., 31, 109.

*M. H. Sessions,* for defendant in error.

From aught that appears in the case, the oath of the assessor required by the statute might have been made, and in the office of the clerk, and the presumption is that it was so made, and in the office, until the contrary appears, and if that is true the fact that the same was not attached to the assessment roll can have no possible effect whatever to invalidate the same. Again, the oath is only one of the many things directed to be done by the assessor to secure a fair, just, and impartial assessment of all property required to be assessed as the basis of taxation, and when that is obtained the spirit and object of the law is satisfied. That an assessment of this kind was made in this case is not denied. Then why should not the defendant's title upon the sale of 1870 be sustained? *Van Rensselaer v. Witbeck*, 7 Barb., 133. *Parish v. Golden*, 35 N. Y., 462. This case is fully endorsed by the U. S. circuit court in Southern District of Ohio. *Pullace v. Kinsinger*, 9 A. L. R., 562. If the value of the property be rightfully fixed by the assessor, the assessment is valid, though that value was arrived at in a way different from that pointed out by the statute. *Hart v. Plum*, 14 Cal., 149. In *People v. Canal Co.*, 48 Cal., 143, the court held that " a tax is not void because the record of the board of supervisors in levying it is not signed by the chairman and clerk of the board."

Section six provides that " irregularities in making assessments, and in making the returns thereof, in the equalization of property as now provided by law, and in the mode and manner of advertising the sale of real estate, shall not invalidate the sale of any real estate when advertised and sold by the county treasurer for delinquent taxes due thereon." Gen. Stat., 936.

This law is constitutional, and the legislature has power to declare that if the land is liable to the tax levied upon it, and the owner will not pay the tax before sale, nor redeem the land as required in the appointed time,

that no omission or irregularity which may occur in the
proceedings of the officers charged with the execution of
the revenue laws shall thereby render the tax deed void.
Blackwell on Tax Titles, 100, 112, and authorities cited.
That the defects complained of are mere irregularities
and cured by this statute, is fully established by the fol-
lowing authorties: *Smith v. Cleveland*, 17 Wis., 556.
*Gulf Railroad Co. v. Morris*, 7 Kan., 210. The omis-
sion of the oath can only be regarded as an irregularity
in the making of the assessment, which by no means
renders the same void. *Thompson v. Breckenridge*, 14
S. & R., 346. *Montgomery v. Meredith*, 16 Penn. State,
42. *Gwynne v. Niswanger*, 20 Ohio, 558. *Eldridge v.
Kuehl*, 27 Iowa, 161. *People v. McCreery*, 34 Cal., 432.
*State v. C. P. R. R. Co.*, 10 Nev., 50.

GANTT, J.

This action was brought in the usual form to recover
the possession of real property. The defendant ad-
mits that he is in possession of the property, but
denies the ownership of the plaintiff, and avers title in
himself; and by supplemental answer, he says that
since the filing of his answer the treasurer of Lan-
caster county has executed and delivered to him two
tax deeds for the property in controversy "for the
non-payment of taxes upon the land" for the years 1870
and 1871. The plaintiff denies all the new matter set
up in the defendant's answer, and in reply to the defend-
ant's supplemental answer he denies that the two deeds
were in due form of law, "whereby said premises de-
scribed in plaintiff's petition were duly and legally con-
veyed to said defendant for non-payment of taxes upon
the land." A jury was waived and a trial had to the
court. By stipulation between the parties it is agreed
that the bill of exceptions contains all the evidence and

facts in the case; and according to these facts it appears
that by a chain of conveyances running back to and in-
cluding the patent from the United States, the legal title
to the land was in the plaintiff; and that the defendant
was in the possession of the land under three several
deeds, conveying the land to him by the treasurer of
Lancaster county on sale for the taxes for the years 1869,
1870, and 1871. It further appears that the plaintiff in-
troduced in evidence the assessment rolls for the years
1869, 1870, and 1871, which include the land in question
and from which "it appears that on none of them was
there any oath of any assessors attached as the statute
provides," and further that the notice of sale of 1871 for
taxes of 1870 was advertised to commence on the first
Tuesday instead of the first Monday in September, and
that the notice of sale for taxes of 1871 fixed the place
of sale at the front door of the treasurer's office, whereas
the deed recites that it actually took place at the door of
the court house. The tax deeds are not preserved in the
bill of exceptions. The record also shows the court be-
low found that the tax deeds were valid on their face
and were *prima facie* evidence of title to the land in de-
fendant under the statute; that from the evidence intro-
duced on the trial, the assessment rolls for 1869, 1870, and
1871 did not have the oath of the assessor attached
thereto, and for this defect the tax deeds were void; and
that the tax deeds on the sales for the taxes of 1870 and
1871 were also void by reason of defects in the notices
of the sales; and also found the several amounts of taxes
paid by the defendant. The only judgment rendered
by the court below was against the plaintiff and in favor
of the defendant for the several amounts of taxes paid
by him and the interest thereon. The plaintiff now
complains that the court erred in rendering this judg-
ment; that it is not sustained by the evidence and is
contrary to law.

The important and perhaps controlling question raised by the pleadings and facts as admitted in the bill of exceptions is, whether the oath of the assessor, certified by the officer administering it, and attached to the assessment roll, is an essential pre-requisite to the ex-ercise of any power or to any proceeding in the taxation of property.

It is an unquestionable principle of law that certain jurisdictional facts must exist as conditions precedent to be performed before there can be any exercise of the taxing power by municipal officers, and it is an inflexible rule that the listing and assessment of property is one of the essential pre-requisites to confer jurisdiction upon the board of county commissioners over the subject matter. In *McCready v. Sexton*, 29 Iowa, 390, it is justly said that such previous acts are essential and jurisdictional facts. "The legislature may prescribe the time and manner in which these essential and jurisdictional acts shall be done, but it cannot either constitutionally, or in the nature of things, provide for passing title to property for the non-payment of taxes without them." Therefore the first essential step which constitutes the basis of all subsequent proceedings is a valid assessment of the taxable property. The assessor must do this, and he completes his work by preparing and delivering into the office of the county clerk the assessment roll with his oath attached, certified by the officer administer-ing it, in form substantially as prescribed by the stat-ute. It is this report or document which vests the board of commissioners with authority to act in the mat-ter; and if the assessor fails to comply with the essen-tial and mandatory requirements of the law, his report or assessment roll confers on the board of commissioners no jurisdiction over the subject matter. The assessment is the official estimate of the value of property subject to taxation, and constitutes the basis of apportionment;

hence, without it no apportionment can be made, and without it all subsequent proceedings to subject the property of the citizen to taxation can have no support and must be treated as mere nullities. It is said that "the law never assumes the existence of jurisdictional facts"; they must, however, exist before any subsequent step can be taken in the taxation of property. In *Abbott v. Lindenbower*, 42 Mo., 168, it is said that "a valid assessment is an essential pre-requisite to the lawful exercise of the power of taxation." *Thatcher v. Powell*, 6 Wheat., 125, 127. *M'Call v. Lorimer*, 4 Watts, 353, 357. *Marsh v. Chesnut*, 14 Ill., 225. *Morrill v. Swartz*, 39 Ill., 110.

Our revenue statutes require all property, personal and real, to be listed each year, and to be assessed at its actual value at the place of listing, and require the assessor to prepare and deliver into the office of the county clerk, by the second Monday in April, his assessment roll; and section 12 provides that "the assessor *shall* take and subscribe an oath, to be certified by the officer administering it, and attached to the assessment roll," which oath shall be substantially in form as prescribed in this section. The rule will not be questioned that where the particular provisions of a statute relate to some immaterial matter, not of the essence of the thing to be done, or where compliance is a matter of convenience rather than of substance, or where the directions of the statute are "designed for the information of the officers, and intended to promote method, system, and uniformity in the modes of proceeding," and are not accompanied by negative words, imputing that the acts required shall not be done in any other way, such provisions may generally be regarded as directory. But it is observed that in the enactment of tax laws, the legislature is unrestrained in its authority over the subject, and the presumption is that the law contains just what the

legislature intended it should embrace; and therefore in the construction of such laws, the first duty of the court is to ascertain the real intent of the law. It is not for the court to say, in its opinion, whether the law is or is not wise, just, and politic in its requirements and directions, for it is the province of the legislature alone to decide these questions, and it is the duty of the court to give effect to the intent of the law, provided it is not subversive of the constitution. If, however, the terms employed in the statute are plainly imperative, then there is no room for construction, because the intent is clear and the requirement of the law is mandatory. *Supervisors v. The People*, 8 Hill, 511. Sedg. on Stat. and Con., 325. And it is said in *Western Ry. v. Nolan, et al.*, 48 N. Y., 518, that "the assessors are *quasi* judicial officers when acting within the sphere of their jurisdiction, and their assessments when made become judgments to be enforced by a warrant, in the nature of a special execution to be issued by the supervisors of the county"; and the supreme court of our own state has held that in respect to municipal officers, "the grant of powers to such officers must be strictly construed, because when acting under such special authority they must act strictly on the con ditions under which their authority is given," and when the "statute shows the legislature intended a compliance with its provisions to be essential to the validity of the act or proceeding, or where some antecedent or prerequisite condition must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory." *S. C. & P. Ry. v. Washington Co.*, 3 Neb., 41. *Hurford v. City of Omaha*, 4 Neb., 351. *Corp. of Washington v. Pratt*, 8 Wheat., 663. *Easton v. Callender*, 11 Wend., 94.

In section twelve above referred to affirmative words are employed, and in *District Township v. City of Du-*

*buque*, 7 Iowa, 275, it is held that "affirmative words may, and often do, imply a negative of what is affirmed as strongly as if expressed. So, also, if by the language used a thing is limited to be done in a particular form or manner it includes a negative that it shall not be done otherwise." Now the requirement of the statute in respect to the oath of the assessor is as plainly imperative as that in respect to the return of the assessment roll, and no one will pretend that there can be any taxation, or jurisdiction in the commissioners over the subject matter without an assessment. The oath is the only security of the citizen for an equality of taxation and an impartial and just estimate of the value of property; and it is said that an assessment "is not only indispensable, but in making it the provisions of the statute under which it is to be made must be observed with particularity. If this were not compulsory—if the officers were to be at liberty to disregard important provisions of the statute in this initiatory step, the chief protection which the law has intended for individuals in tax cases would be removed." Cooley on Taxation, 259, 260. *Smith v. Davis*, 30 Cal., 536. *Whitney v. Thomas*, 23 N. Y., 285. *Thurston v. Little*, 3 Mass., 429. *Thayer v. Stearns*, 1 Pick., 482. *McReynolds v. Longenberger*, 57 Penn. St., 13. *Lane v. Bommelman*, 21 Ill., 147. 23 Ill., 523. 27 Cal., 51.

In the state of New York the duties of the board of supervisors in respect to taxation of property are the same as those of our board of county commissioners. The statute of that state required a certificate in a certain form to be annexed to the assessment; and in *Van Rensselaer v. Whitbeck*, 7 N. Y., 521, it is held that "the certificate was intended to prevent favoritism and partiality by compelling the assessors solemnly *to affirm* that they have estimated each taxpayer's property at its full value. If this rule is complied with, equality in

taxation will be secured, and in no other way. The proceedings therefore would be fatally defective if no certificate had been annexed to the assessment," and in conclusion the court says: "that the assessment roll was not complete and in a condition to be delivered to the board of supervisors until a certificate was made, containing substantially the matter specified in the statute; that the assessment roll thus certified to, is necessary to confer jurisdiction upon the board of supervisors, and that the warrant and roll constitute a process in the nature of an execution and must be construed together, and that the defect of jurisdiction in this case being apparent on the face of the instrument it was no protection to the collector." And in *Westfall v. Preston*, 49 N. Y., 349, it was again held that "a substantial compliance with the terms of the statute prescribing the verification is necessary to give the board of supervisors authority to impose a tax and issue their warrant to the collector for its collection." *In Re Petition of Cameron*, 50 N. Y., 502. *Alger v. Curry*, 38 Verm., 382. *Robson v. Osborn*, 13 Texas, 299. 23 Texas, 36. *Davis v. Farnes*, 26 Texas, 296-7.

It seems to us very clear, upon both principle and authority, that a substantial compliance with the requirements of the statute prescribing the oath to be taken and subscribed by the assessor, is an essential pre-requisite—a jurisdictional fact that must exist before the board of commissioners can exercise any power in the taxation of property, and that without such oath there is in law no assessment. We are aware that there is much disregard of the plain mandates of the law by officers in the administration of municipal government; but however much we may desire to avoid the consequences of the inexcusable conduct of such officers, yet, as a court, we must take the law as we find it, and give effect to its real intent in respect to the powers of municipal officers

In the case under consideration, the consequence is that all the acts of the officers in relation to the supposed taxation of the plaintiff's land for the years 1869, 1870, and 1871, are simply void; and in *Elliott v. Peirsal*, 1 Peters, 340, it is said that if a court "act without authority its judgments and orders are regarded as nullities. * * * * They constitute no justification, and all persons in executing such judgments and sentences are considered in law as trespassers." Bouvier states the rule with precision as follows: "It is a rule of law that whatsoever is absolutely null produces no effect whatever." This doctrine applies to all tribunals, boards, and officers, who exercise judicial functions. If they act without authority—without jurisdiction—their proceedings are "not voidable, but simply void" and "produce no effect whatever." *Stanton v. Ellis*, 12 N. Y., 577. *Borden v. Fitch*, 15 John., 141. *Wise v. Withers*, 3 Cranch, 331. *Barrett v. Crane*, 16 Verm., 250, and cases cited. *Robinson v. Mathwick*, 5 Neb., 255.

It was, however, earnestly contended that all defects in the proceedings of the officers, in this case, were cured by force of section six of the act of June 6, 1871. It provides as follows: "Irregularities in making assessments and in making returns thereof, and in the mode and manner of advertising the sale of real estate, shall not invalidate the sale of any real estate when advertised and sold by the county treasurer for delinquent taxes due thereon." It will be observed at first glance that this act cures irregularities only and not jurisdictional defects. The jurisdictional fact must exist before an irregularity can occur, for without the existence of such fact there is in law no assessment, and all subsequent acts of the officers are mere nullities, and it will not be urged that the legislature can transform nullities into valid acts, or create something out of nothing. It is said in *McReady v. Saxton, supra*, the legislature can-

not annul or change the jurisdictional facts,—" it cannot excuse the non-performance of them, and of course cannot make the doing of any other thing a substitute for them, or conclusive evidence of their being done." The act is intended to cure irregularities, not the want of jurisdiction. *Tallman v. White*, 2 Comst., 69. *Robson v. Osborn*, 13 Texas, 307.

It was also urged in the argument that in order to defeat the title under a sale for delinquent taxes, some one or more of certain things enumerated in the statute must be proved; and one of these is this: " That the land had never been assessed for taxation." This fact at least has been established, for, as already shown there was in law no assessment by reason of the failure of the assessor to perform an essential pre-requisite required by the law.

Again, it was contended that under section 104 of the act of 1869 the claimant of the land is required to pay over to the county treasurer for the use of the purchaser the amount necessary to redeem at the same rate as in cases of land redeemed within two years from the sale before any judgment can be rendered against the purchaser, and that this payment is a condition precedent which the plaintiff must perform before she can have judgment against the defendant or any relief in the premises. But this section as amended by the act of February 18, 1875, is materially changed, and provides as follows: " No person shall be permitted to question the title acquired by a treasurer's deed without first showing that he or she, or the person under whom he or she claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale, and that all taxes due upon the land have been paid by such person or the person under whom he or she claims title as aforesaid."

This act as amended contemplates a title acquired by

Morrill v. Taylor.

a treasurer's deed, and although it may be invalid by reason of some default in the proceedings after jurisdiction had attached, yet that there must be some sort of a title is very clearly indicated by the law. But the proposition will hardly be questioned that if the proceedings are wholly without any jurisdiction in the board of commissioners over the subject matter there is in law no assessment, no taxes due, and no title acquired. Hence, according to the authorities referred to, all persons engaged in the execution of any order or warrant under such proceedings "are considered in law as trespassers."

Again, section seven of the act of June 6, 1871, is referred to in support of a title in the defendant. This section provides that "whenever the *title* acquired by a purchaser at a treasurer's sale shall fail," the purchaser shall have a lien upon the land for the amount of purchase money and taxes paid by him together with interest thereon, and he may enforce such lien in the manner described for foreclosing mortgages. If this section can stand with section 104 as amended, then it will be observed that two elements must exist to give it force and effect, that is, there must be a tax assessed and a title acquired at a treasurer's sale; but without jurisdiction in the board of commissioners to act in the matter neither one of these elements can exist in law—and in law there is no title to fail.

We think the want of jurisdiction in the board of commissioners is decisive of this case, and therefore it is unnecessary to examine several other questions discussed in the argument. The judgment of the court below is reversed, and as the parties by stipulation in the record agree that we shall render a final decision in the case, therefore, upon the pleadings and facts in the record, the finding and judgment must be for the plaintiff.

JUDGMENT ACCORDINGLY.

After the rendition of the foregoing decision, the defendant in error filed an application for a re-hearing of the cause, on the ground that upon the trial of the cause in the court below, it being necessary that said Annie Morrill should prove that there was no assessment of the land in controversy for the years 1869, 1870, and 1871, the assessment rolls for those years were introduced in evidence, from which it appeared that on none of them was there the oath required to be taken by the assessor; that the county clerk testified that he had searched through the records of the office, and could not find said oaths or any of them; that relying upon this testimony as being true in fact, he entered into the stipulation hereinbefore referred to, which stood in place of the bill of exceptions, upon which the cause was reviewed in this court; but that since the decision of this cause by this court, he had caused diligent search to be made and had found the original oaths of said assessors among the records of said county clerk's office, though not attached to the assessment rolls. This application was supported by affidavits.

Upon the application, *M. H. Sessions*, and *Brown, England & Brown* for Taylor, said: "The maxim, *Ignorantia neminem excusate*, is one that we abide by, and any agreement or stipulations that we have made in ignorance of the law we do not ask to be relieved from. That maxim, however, has no application where the agreement or stipulation was made under a mistaken apprehension of the facts or of the law and facts combined. *Becker v. Lamont*, 13 How. Pr., 23. *Sharp v. The Mayor*, 19 How. Pr., 193. That the mistake complained of in the stipulation in this case is one of fact and not of law is conclusively shown by the record, and that the same was not made by any carelessness or negligence of the defendant or his counsel is also as conclusively shown by the record.

*C. C. Burr* for plaintiff in error.

No re-hearing can be allowed. The stipulation concludes the parties to the record. *McCann v. McLennan,* 3 Neb., 35. The defendant in error has had from April, 1871, to the date of signing the stipulation in 1877, to examine the records and files in the clerk's office to find these assessors' oaths that he now claims to have discovered, and if they were in the clerk's office all these years, and not attached to the assessment roll, and defendant in error would not find them, he is guilty of gross negligence, and ought not now to be relieved from his stipulation. The setting aside of the stipulation and vacation of this judgment would be a dangerous precedent which would lead to infinite confusion. No judgment will be final. The power to vacate a judgment is discretionary, but when this discretion of the court is spoken of a sound legal discretion is meant, and courts will act with great caution, and rarely exercise their authority by the vacation of a judgment. *McConn v. McLennan, supra.* Suppose a re-hearing is granted in this case, of what avail will it be to the defendant in error? Can he introduce proof in this court that such oaths as he claims to have discovered are in existence? Is not the record now in this court the only source from which this court can draw its knowledge of the facts in this case? Even in a criminal case, suppose a person convicted of a penitentiary offense, the conviction sustained by the supreme court, and it should then be ascertained beyond all question that the man was innocent from conclusive evidence discovered after the conviction had been sustained, could the supreme court grant a re-hearing which would avail anything, or send the case back for a new trial? We think the only relief that could be granted would be a pardon. I know of no

reason or authority for the granting of a new trial, or a re-hearing, in the supreme court, on the ground of newly discovered evidence. We think the application for a re-hearing should be denied.

GANTT, J.

After the hearing of this cause and the entry of judgment therein, the defendant filed a petition praying the court to set aside said judgment and also to set aside a stipulation or part thereof made by the counsel of respective parties, containing "a statement of facts which were agreed upon as being all the evidence in the case, and the decisions and rulings of the court below and exceptions thereto," and also for a rehearing of the case. The statement agreed to is made the bill of exceptions in the case, and was by the court allowed, and ordered to be made a part of the record of the case, and was signed by the judge as the bill of exceptions, and is certified to this court as a part of the record. Affidavits are filed with the petition; and the application is based on the ground that " accident or mistake " in respect of certain facts occurred upon the trial of the cause in the district court without fault of the defendant.

As shown by the petition, this court is not asked to rehear the cause upon the record brought here upon petition in error, but to hear it upon the petition and affidavits *dehors* the record, and set aside a part of that record on the sole ground of accident or mistake in respect of facts occurring on the trial of the cause in the court below.

Now, whether the bill of exceptions be considered as a stipulation that it contains all the evidence in the case, or whether it be viewed as an ordinary bill of exceptions allowed by the judge, and by order of the court made part of the record, is not material, because the present

proceeding is somewhat in the nature of a writ of error in fact, and not an application for a rehearing of the cause upon the record. Has the supreme court jurisdiction to hear and determine such question of error?

It is well understood that in legal proceedings, "error of law is where, on the face of the record, it appears that the judgment was given on insufficient grounds;" and that error in fact must be substantiated by affidavits, and lies only to the same court in which the judgment was given to examine its own record and rectify the error, if any exist. Broom & Had. Com., 270, 271. Therefore it seems clear according to the common law rule of procedure, that in a cause brought here upon petition in error this court has no jurisdiction in such case, and cannot, in proceedings and matters of complaint *dehors* the record, examine such alleged errors of fact.

Again, under our constitution, this court has original jurisdiction only in cases relating to revenue, civil actions in which the state is a party, *quo warranto* and *habeas corpus*, and only "such appellate jurisdiction as may be prescribed by law;" and by section five hundred and eighty-two of the civil code, title XVI, entitled "Errors in Civil Cases," the statute provides that "a judgment rendered or final order made by the district court may be reversed, vacated, or modified by the supreme court, *for errors appearing on the record*." Hence, the powers of this court are limited to *errors appearing on the record*; but the question raised by defendant's petition and presented for determination by this court is in respect of a matter entirely foreign to the record, and therefore the conclusion seems inevitable that the subject matter of complaint does not come within the jurisdiction of this court, under the powers conferred upon it, by either the constitution or the statute. But again the bill of exceptions is regularly allowed and signed by the judge, and by order of the

court is made part of the record, and is so certified to this court, and *this* record is the only subject matter of examination in cases here on error.

In *Smith v. Wilson*, 26 Ill., 187, the court said: " We may observe here, that this court has repeatedly held that affidavits and other papers not intrinsically parts of the record, are not made so by the fact that the clerk has incorporated them into the record. They are extrinsic *dehors* the record, and can only be made part of the record by bill of exceptions;" and in *Boynton v. Champlin*, 40 Ill., 64, it is held that "upon an application for a re-hearing we cannot entertain a suggestion of a diminution of record, nor can we receive affidavits." If such a practice were to obtain, it would not only be an infringement of the constitution and of the statute relative to cases in error, but it would open the door to the granting of rehearings generally upon new matter *dehors* the record, and would prolong litigation and in many cases delay justice. Indeed, its tendency would be to make litigation endless, whereas the whole policy of the law is, that actions must cease when all litigation must come to an end, and this is not only the doctrine of the common law, but it is incorporated into and established by the constitution and statutes of our state. *McPherson v. Nelson*, 44 Ill., 128.

But suppose a rehearing should be allowed in disregard of the foregoing principles of law, then in order to render it availing to the defendant leave would have to be granted to him to introduce evidence in this court not produced on the trial of the cause in the court below; but such practice would, in legal effect, essentially be a hearing for a new trial on the ground of newly discovered evidence. Surely it will not for a moment be contended that this court has jurisdiction in such cases. The statute provides when and where such application must be made. It will be observed and understood that

our decision of this case does not in any respect rest upon a stipulation signed by the counsel of the respective parties. We think the settled rules of practice in proceedings in error, as well as the want of jurisdiction in this court over the subject matter of complaint, are decisive of the case; and therefore we do not express any opinion as to the power of the court to set aside, on the ground of mistake in fact, a stipulation made by the parties or their counsel during the trial of a cause. The petition must be dismissed and a rehearing denied.

JUDGMENT ACCORDINGLY.